## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CORTEZ LARNELL MOORE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:19-CV-01206-MAB |
| | ) |
| **JOHN BALDWIN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## <u>MEMORANDUM AND ORDER</u>

**BEATTY, Magistrate Judge:**

This matter is before the Court on two motions: (1) a motion for judgment on the pleadings filed by Defendants Wexford Health Sources and Mohammed Siddiqui, M.D. (hereinafter the "Wexford Defendants") (Doc. 120); and (2) a motion for leave to file first amended complaint by Plaintiff Cortez Moore (Doc. 140). For the reasons set forth below, the Court DENIES the motion for judgment on the pleadings (Doc. 120) and DENIES the motion for leave to file an amended complaint (Doc. 140).

### BACKGROUND

I.   *<u>The alleged assault and Plaintiff's injuries:</u>*

Plaintiff Cortez Moore filed this action pursuant to 42 U.S.C. § 1983 on November 4, 2019, for deprivations of his constitutional rights while he was incarcerated at Menard Correctional Center (Docs. 1, 15). Plaintiff alleges that on June 14, 2017, Defendant Trokey placed him in handcuffs and then verbally and physically assaulted him while other officers observed and did not intervene (Doc. 15 at p. 2). After the assault, Plaintiff claims

he sought medical care for his injuries but was repeatedly denied care (*Id.*). Plaintiff was treated by a doctor for the first time on July 28, 2017 (*Id.*). Plaintiff alleges the doctor informed him that he was not seen earlier because Menard was understaffed (*Id.*). Plaintiff was prescribed Ibuprofen for his pain but was not given any other medication or sent for an MRI (*Id.*).

   II.    *Plaintiff's initial grievance filings:*

After the alleged assault, Plaintiff filed grievances on June 14, 2017, and July 24, 2017 (Doc. 69, p. 6; Doc. 1-2, pp. 1-18). Plaintiff submitted the June 14, 2017, grievance (the "June Grievance") as an emergency grievance. (Doc. 1-2 at p. 5). Plaintiff alleges he mailed the June Grievance to two Defendants, Warden Lashbrook and Director Baldwin (Doc. 60-2, p. 4). When Plaintiff did not receive a response within twenty days, he contacted his Trust Fund Officer to see if money had been removed from his account to pay for the grievances' postage (*Id.* at p. 5; Doc. 60-3, p. 48). Plaintiff believes the grievance letters were either intercepted or lost because no money was taken out of his trust fund account (Doc. 60-2, p. 5). Plaintiff also attempted to follow up on his June Grievance by writing letters to Defendants Lashbrook and Baldwin on July 21, 2017 (Doc. 60-2, p. 7; Doc 60-3, pp. 4-7). While it is unclear what caused the substantial delay, Plaintiff's June Grievance was received by the Chief Administrative Officer on August 2, 2017 (Doc. 1-2 at p. 5). The grievance was denied on August 4, 2017 (*Id.*). The Chief Administrative Officer checked the box that states an emergency is not substantiated and the grievance should be submitted in the normal manner (*Id.*).

On July 24, 2017, Plaintiff submitted a second emergency grievance (the "July

Grievance") relating to the assault (Doc. 1-2 at pp. 9-18). The July Grievance is similar to the June Grievance but includes additional complaints regarding the lack of medical care Plaintiff received following the assault (*Id.*). The July Grievance also recounted Plaintiff's attempts to follow up on the June Grievance (*Id.* at pp. 11-12). The July Grievance was also received by the Chief Administrative Officer on August 2, 2017, and denied two days later as a non-emergency (*Id.* at p. 13).

   III.   *Plaintiff's grievance appeals and re-filings:*

After Plaintiff's June and July Grievances were denied as non-emergencies, the grievances took two separate, simultaneous paths (Doc. 69, p. 11). On one path, Plaintiff attempted to refile the grievances in the "normal manner" as instructed by the Chief Administrative Officer (*Id.*). Meanwhile, on the second path, Plaintiff appealed the Chief Administrative Officer's determination that the grievances were non-emergencies (*Id.*).

   A. *Plaintiff's attempts to refile using the normal manner:*

Plaintiff re-submitted both grievances in the "normal manner" by placing them directly in the mailbox of his counselor, Mr. Niepert, on August 12, 2017 (*Id.*; Doc. 60-4, p. 43). However, the grievances were not marked as received until September 5, 2017 (Doc. 60-4 at pp. 51-53). Based on the date Counselor Niepert received the grievances, he denied the June Grievance as "out of time frame" and then denied the July Grievance as a "duplicate grievance" that was "grieved previously and deemed out of time." (*Id.*).

On September 5, 2017, after receiving Counselor Niepert's two denials, Plaintiff wrote an appeal letter to Kelly Pierce, Acting Grievance Officer (Doc. 1-2, pp. 58-61). In the letter, Plaintiff argued Counselor Niepert erroneously concluded Plaintiff's

grievances were not filed within the 60-day timeframe and failed to adequately investigate his grievances (*Id.*). On September 10, 2017, Plaintiff wrote a second letter to Ms. Pierce (*Id.* at pp. 62-70). In the second letter, Plaintiff explained at length why he believed Counselor Niepert was mistaken in concluding that his July Grievance was duplicative of his June Grievance (*Id.*). On October 24, 2017, Plaintiff wrote a third letter to Ms. Pierce that requested to meet with her to discuss the June and July Grievances (*Id.* at p. 73). Plaintiff also asked Ms. Pierce to forward the grievances to the Grievance Officer (*Id.*). The record does not contain any responses from Ms. Pierce (Doc. 69 at p. 13).

As shown by Plaintiff's cumulative counseling summary, the Assistant Warden of Programs Office received photocopies of Plaintiff's June and July Grievances on October 30, 2017 (Doc. 52-2, p. 5). The summary indicates the grievances were not considered because they: (1) were not submitted in the timeframe outlined by Department Rule 504; and (2) included photocopies, as opposed to original grievances, which also violated Department Rule 504 (*Id.*).

Finally, Plaintiff alleges to have sent the Administrative Review Board his original grievances, Counselor Niepert's response, the grievance officer's response, and the Chief Administrative Officer's response on or around November 9, 2023 (Doc. 1-2, pp. 128-135; Doc. 60-4, pp. 40-46).

### B. *Plaintiff's appeal of the finding that his grievances were non-emergencies:*

In addition to resubmitting his grievances in the normal manner, Plaintiff also appealed the Chief Administrative Officer's determination that his grievances were non-emergencies. On August 8, 2017, Plaintiff wrote a letter to Defendant Baldwin and the

Administrative Review Board, appealing the emergency grievance review decisions (Doc. 52-1, pp. 18-23; Doc. 60-5, pp. 6-10). Plaintiff acknowledged that he received the Chief Administrative Officer's response on August 7, 2017, which deemed his grievance as a non-emergency and instructed him to submit it in the normal manner (Doc. 52-1 at p. 20). Plaintiff asked Defendant Baldwin for help in appealing the Chief Administrative Officer's decision because he believed the situation should have been deemed an emergency based upon his injuries and the danger he was in (*Id.* at p. 21).

The letter to Defendant Baldwin was not marked as received until September 5, 2017 (Doc. 52-1 at p. 18). On September 27, 2017, the Administrative Review Board determined additional information was required and requested Plaintiff provide his original grievances including the counselor's response and a copy of the response to his grievances including the Grievance Officer's response and the Chief Administrative Officer's response (*Id.* at p. 1). As noted in the previous section, Plaintiff claims to have provided the additional information on or around November 9, 2017 (Doc. 1-2, pp. 128-135). In a letter to the Administrative Review Board from that date, Plaintiff stated he was responding to their correspondence from September 27, 2017, by providing the required documents (*Id.*). Plaintiff's letter also outlined his frustrations with the grievance process and his attempts to exhaust his administrative remedies (*Id.*).

IV.  *Procedural history of Plaintiff's case:*

Plaintiff allegedly attempted to file this action on October 24, 2019[1] (Doc 1-1). However, Plaintiff claims he was unable to do so because the prison's E-filing machine was down and then the law library was closed (*Id.*). Ultimately, Plaintiff filed this action on November 4, 2019 (Docs. 1, 15). In addition to attaching numerous filings regarding the June and July Grievances, Plaintiff included a letter explaining his inability to file this action on October 24, 2019 (Doc. 1-1).

After a threshold review pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

> **Count 1:** Lieutenant Trokey used excessive force against Plaintiff in violation of the Eighth Amendment;
>
> **Count 2:** Sergeant Macuria, C/O Burshur, John Doe #1, and John Doe #21 failed to intervene to stop Lieutenant Trokey's use of force in violation of the Eighth Amendment;
>
> **Count 3:** Lieutenant Trokey, Sergeant Macuria, C/O Burshur, John Doe #1, and John Doe #2 retaliated against Plaintiff in violation of the First Amendment because Plaintiff submitted grievances;
>
> **Count 4:** Lieutenant Trokey, Sergeant Rowes, and Dr. Siddiqui were deliberately indifferent to Plaintiff's need for medical treatment in violation of the Eighth Amendment;
>
> **Count 5:** John Baldwin, Jacqueline Lashbrook, and Wexford had unconstitutional policies of understaffing the healthcare unit, refusing outside care, and cancelling call passes which were in violation of the Eighth Amendment (Doc. 15, pp. 4-5).

---

[1] In the letter, Plaintiff states he was unable to E-file his action on October 24, *2017*, because the E-file machine was down (Doc 1-1, p. 1). It is clear that this was simply a typographical error and that Plaintiff meant he was unable to file his action on October 24, ***2019***.

Thereafter, Defendants moved for summary judgment, arguing Plaintiff failed to exhaust his administrative remedies before filing this action (Docs. 47, 48, 51, 52). Plaintiff filed his response in opposition to Defendants' motions in September 2020 (Docs. 60, 62). On January 29, 2021, the Court denied Defendants' motions for summary judgment (Doc. 69). Specifically, "the Court conclude[d] based on the totality of the evidence that the grievance process was rendered unavailable to Plaintiff with respect to the June 14 and July 24, 2017 grievances and he is deemed to have exhausted these two grievances." (*Id.* at p. 25).

On February 14, 2022, Plaintiff filed a motion for recruitment of counsel (Doc. 87). The Court granted the motion (Doc. 88), which led to Plaintiff being represented by his current counsel on May 9, 2022, and July 21, 2022 (Docs. 104, 105, 112). The Wexford Defendants filed the instant motion for judgment on the pleadings on October 27, 2022, arguing Plaintiff's claims are time-barred because they were not filed within the applicable statute of limitations (Doc. 120).[2] Plaintiff filed his response in opposition to the motion on November 7, 2022 (Doc. 126). The Wexford Defendants filed a reply in support of their motion on November 21, 2022 (Doc. 128).

On December 22, 2022, Plaintiff's counsel filed a status report that stated counsel was preparing a proposed First Amended Complaint and related motion for leave to amend (Doc. 131, p. 2). Plaintiff's counsel anticipated the filings being ready within a

---

[2] The motion for judgment on the pleadings also sought a protective order regarding Dr. Siddiqui (Doc. 120 at p. 5). The Court ruled on the motion for a protective order on December 2, 2022 (Doc. 130). Consequently, this Memorandum and Order addresses only the request for judgment on the pleadings since the request for protective order has already been resolved.

month (*Id.*). After more than two months without any updates, the Court ordered Plaintiff's counsel to file the proposed amended complaint and motion to amend by February 10, 2023 and prompted Plaintiff to address both the good cause standard and Federal Rule 15 (*See* Doc. 137). Plaintiff filed a motion on February 9, 2023 (Doc. 140). Both the Wexford Defendants and the remaining Defendants (hereinafter, the "IDOC Defendants") filed responses in opposition to Plaintiff's motion to amend (Docs. 141, 142).

## MOTION FOR JUDGMENT ON THE PLEADINGS

1. *Legal Standard for Judgment on the Pleadings:*

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the plaintiff's complaint and defendant's answer have been filed. *See also Moss v. Martin,* 473 F.3d 694, 698 (7th Cir. 2007). "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). "We therefore take the facts alleged in the pleadings in the light most favorable to the nonmoving party, and we will sustain the entry of judgment only if it is beyond doubt that the nonmoving party cannot prove facts sufficient to support its position and that the movant is entitled to relief. *Citizens Ins. Co. of Am. v. Wynndalco Enterprises, LLC*, 70 F.4th 987, 994-95 (7th Cir. 2023). Additionally, "[f]or purposes of the motion, the pleadings include not only the complaint, the answer, and counterclaims, but any written instruments attached thereto." *Id.* at 995.

2. *Analysis of the Wexford Defendant's Motion:*

The Wexford Defendants argue the Court should grant their motion for judgment

on the pleadings because Plaintiff's claims are barred by the statute of limitations (Doc. 120 at pp. 3-5). In response, Plaintiff contends his complaint was timely filed after tolling is accounted for. Analyzing Plaintiff's filings under the applicable standard of review, the Court agrees with Plaintiff and therefore, denies the Wexford Defendant's motion for judgment on the pleadings.

Claims made pursuant to 42 U.S.C. § 1983 are considered personal injury claims and are subject to the personal injury statute of limitations where the alleged injury occurred. *See Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996); *Lopez v. Wexford Health Sources, Inc.*, 2020 WL 4003352, at *4 (S.D. Ill. July 15, 2020). The statute of limitations in Illinois for personal injury lawsuits is two years. 735 ILCS § 5/13-202; *see also Delgado-Brunet*, 93 F.3d at 342. However, while Illinois law determines "the length of the limitations period, federal law determines the date of accrual of the cause of action." *Behav. Inst. of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). Section 1983 claims accrue when the plaintiff knows or should have known that his constitutional rights have been violated. *Id.* Consequently, Plaintiff's claims related to the June Grievance began to accrue on June 14, 2017, and his claims related to the July Grievance began to accrue, at the latest, on July 28, 2017.

In determining whether Plaintiff's claims are barred by the statute of limitations, the Court does not simply add two years to the date Plaintiff's claims accrued to determine if his complaint was timely filed. Instead, the Court must also consider whether the statute of limitations was tolled for any of the time between when Plaintiff's claims accrued and this action was filed. *See generally Bd. of Regents of Univ. of State of N.*

*Y. v. Tomanio*, 446 U.S. 478 (1980). "Courts also apply the tolling laws of the state where the injury occurred." *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Significantly, because a prisoner must exhaust his administrative remedies before he can file a complaint regarding prison conditions, *see Jones v. Bock*, 549 U.S. 199, 211 (2007), the Seventh Circuit has repeatedly held "a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process." *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001); *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) ("Section 1983 suits in Illinois have a two-year statute of limitations, which is tolled while the prisoner exhausts the administrative grievance process."); *Lucio v. Santos*, 2014 WL 11381095, at *2 (S.D. Ill. Jan. 29, 2014) ("The tolling period starts when the prisoner files his grievance and ends when the administrative review process is over.").

As relevant to Plaintiff's administrative review, the key dates are as follows:

1. June 14, 2017: Plaintiff was allegedly assaulted and most of Plaintiff's claims began to accrue (Doc. 1). However, because Plaintiff filed the June Grievance on this date, the statute of limitations was tolled (Doc. 1-2 at p. 3).

2. July 24 and/or 28, 2017: Plaintiff does not receive proper treatment and his medical claims accrue (Doc. 1). However, the statute of limitations was tolled with the filing of the July Grievance (Doc. 1-2 at p. 11).

3. August 4, 2017: Plaintiff's June and July Grievances were deemed non-emergencies and denied with instruction to re-file in the "normal manner" (*Id.* at pp. 5, 11).

4. August 7, 2017: Plaintiff receives the denial of his emergency grievances (Doc. 52-1 at p. 20).

5. August 8, 2017: Plaintiff writes a letter seeking to appeal the decision that his grievances were non-emergencies (*Id.* at pp. 18-23).

6. August 12, 2017: Plaintiff resubmits both grievances in the normal manner as instructed in the August 4, 2017, denial (Doc. 60-4 at p. 43).

7. September 5, 2017, Counselor Niepert denies Plaintiff's grievances that were resubmitted in the normal manner (Doc. 60-4, pp. 51, 53). Plaintiff appeals the counselor's decision to the acting grievance officer on the same day.

8. October 30, 2017: Assistant Warden of Programs office receives and denies Plaintiff's grievances (Doc. 52-2, p. 5).

9. November 9, 2017: Plaintiff sends the Administrative Review Board the grievances and their relevant responses (Doc. 1-2, pp. 128-135).

10. October 24, 2019: Plaintiff attempts to E-file his complaint but is unable to do so due to factors outside of his control (Doc. 1-1).

11. November 4, 2019: Plaintiff successfully files his complaint (Doc. 1).

Accepting all plausible and well-pleaded allegations as true and construing all reasonably drawn inferences from the facts in a light most favorable to Plaintiff, the Court finds the administrative review process was not completed by November 4, 2017 (two years prior to the date Plaintiff filed this action).[3] Tellingly, Plaintiff sent the Administrative Review Board his grievance file on November 9, 2017 (Doc. 1-2, pp. 128-

---

[3] Plaintiff also argues the doctrine of equitable tolling applies to excuse the 11-day period between October 24, 2019, and November 4, 2019. The doctrine of equitable tolling permits a court to excuse a plaintiff's failure to comply with the statute of limitations, when a plaintiff cannot reasonably be expected to sue in time "because of disability, irremediable lack of information, or other circumstances beyond his control." *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996); *see also Rosado v. Gonzalez*, 832 F.3d 714, 717 (7th Cir. 2016) ("Equitable tolling, which is governed by Illinois law, may apply 'if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way.'") (quoting *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000)). Here, Plaintiff's pleadings include a letter explaining why he could not E-file on October 24, 2019, as intended (Doc 1-1). Taken as true, these allegations *may* demonstrate a circumstance beyond Plaintiff's control that justifies the application of equitable tolling for the 11-day period in question. *See Richardson v. Thompson*, 2019 WL 3573578, at *12 (N.D. Ill. Aug. 6, 2019) ("Lack of law library access is a substantial factor in determining whether extraordinary circumstances exist to justify equitable tolling[.]"). However, because Plaintiff adequately pleaded that his administrative review went beyond November 4, 2017, the Court need not decide whether equitable tolling should be applied.

135). This is dispositive for this Court's analysis because it leads to the reasonable inference that review of Plaintiff's grievances went beyond November 9, 2017. *See Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) ("These allegations [regarding tolling] may or may not be true, but they are plausible—and no more is required of a pleading."); *Bianca v. Univ. of Illinois*, 513 F. Supp. 3d 983, 991 (N.D. Ill. 2021) (Employee plausibly pleaded facts that would warrant tolling her claim). Moreover, it is apparent from Plaintiff's pleadings that he was diligently attempting to exhaust his administrative remedies during the time period and not simply writing additional letters in an attempt to toll the statute of limitations.

The Court is not persuaded by the Wexford Defendants' claims that Plaintiff's administrative review concluded on September 27, 2017 (Doc. 120 at pp. 4-5). Notably, the document the Wexford Defendants cite to is a September 27, 2017, response by the Administrative Review Board to Plaintiff that required Plaintiff provide additional information (Doc. 1-2, p. 125). It is unclear why the Wexford Defendants think a request for additional information, which did not contain any indication that further redress was no longer available,[4] should be treated as the last date of Plaintiff's administrative review. Instead, that document provides further evidence that Plaintiff's administrative review remained ongoing until the Administrative Review Board received and reviewed the additional documents that were requested. And again, Plaintiff's well-pleaded and

---

[4] In fact, the Administrative Review Board document from September 27, 2017, contained numerous boxes that could have been checked to mark if/why "no further redress" was available (Doc. 1-2, p. 125). Conspicuously, none of those boxes were checked (*Id.*).

plausible allegations indicate those materials were not sent to the Administrative Review Board until November 9, 2017 (Doc. 1-2, pp. 128-135).

The Court also disagrees with the Wexford Defendant's unsupported declaration that, when considering a motion for judgment on the pleadings, "[i]t is Plaintiff's burden to show that the statute of limitations was tolled." (Doc. 128, p. 2). The Seventh Circuit has clearly explained that "[t]he period of limitations is an affirmative defense" and "[c]omplaints need not anticipate defenses and attempt to defeat them." *Richards*, 696 F.3d at 637. In fact, the only way Plaintiff's complaint could have been properly dismissed based upon the statute of limitations is if Plaintiff's complaint and pleadings established an "airtight defense." *See Hecke v. Unkown Agents of United States Drug Enf't Admin.*, 2022 WL 4353550, at *2 (7th Cir. Sept. 20, 2022). That is simply not the case here and Plaintiff has done more than enough to plausibly allege tolling due to the administrative review process, such that this action is not barred by the statute of limitations.

For these reasons, the Wexford Defendant's motion for judgment on the pleadings is DENIED.

## MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

The Court also considers Plaintiff's motion for leave to file his first amended complaint (Doc. 140). In support of his motion, Plaintiff argues there is no compelling reason to deny his motion for leave to amend and therefore, it should be granted (*Id.* at p. 2). Plaintiff's motion also seeks to dismiss Defendant Siddiqui (*Id.* at p. 1). In response, the Wexford Defendants argue Plaintiff's motion for leave should be denied because it would result in undue delay and prejudice, and Plaintiff's new allegations are futile (Doc.

141). Similarly, the IDOC Defendants argue Plaintiff's motion for leave should be denied because it is untimely, unduly prejudicial, and futile (Doc. 142). For the following reasons, the Court DENIES Plaintiff's motion for leave to amend (Doc. 140).

Pursuant to Federal Rule of Civil Procedure 15(a), courts "should freely give leave [to amend] when justice so requires." Under Rule 15(a), "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to defendants, or where the amendment would be futile." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 855 (7th Cir. 2017) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). However, "when a motion for leave to amend is filed after the deadline for amending the pleadings has elapsed, the generous standard in Rule 15(a)(2) for allowing amendments 'is in some tension with' Rule 16(b)(4), which governs scheduling orders and requires a showing of good cause to justify modifying time limits." *Adams*, 742 F.3d at 733-34 (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)). As a result, district courts are entitled to first apply the heightened "good cause" standard under Rule 16(b)(4)[5] before considering the standard under Rule 15(a). *Id.*

Plaintiff does not dispute that his motion for leave to amend was filed long after the scheduling order's deadline for amending the pleadings had elapsed (*See* Doc. 41). In fact, Plaintiff's motion for leave to amend was filed roughly two and a half years after the

---

[5] Specifically, Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent."

scheduling order's deadline of July 31, 2020 (*Id.*). Therefore, it must first be determined whether Plaintiff has satisfied Rule 16(b)(4)'s good cause standard.

"In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto*, 651 F.3d at 720. In other words, courts review the diligence of the lawyer or lawyers who seek the change to determine whether leave should be granted. *Id.* "Specifically, the Seventh Circuit has held that the requisite diligence is not established if delay is shown and the movant provides no reason, or no good reason, for the delay." *E.F Transit Inc. v. Indiana Alcohol & Tobacco Comm'n*, 2015 WL 3631742, at *2 (S.D. Ind. June 10, 2015). For example, the Seventh Circuit found the plaintiff's delay to be unreasonable when the plaintiff attempted to amend the complaint more than eight months beyond the district court's deadline for leave to amend and on the last day to file a response to the defendant's motion to dismiss. *Alioto*, 651 F.3d at 720; *see also Edmonson v. Desmond*, 551 F. App'x 280, 282 (7th Cir. 2014) (finding delay where more than three months had passed since the opposing party answered, and the deadlines for discovery and dispositive motions had also passed); *Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011) (finding delay seven months after the deadline for amending the pleadings had passed and less than a month before the close of discovery).

Here, Plaintiff's motion has not established good cause under Rule 16(b)(4) because there is simply no evidence to suggest Plaintiff acted diligently in seeking leave to amend. Plaintiff sought leave to amend roughly two and a half years after the deadline to do so had passed. Even if the Court does not factor in the time before Plaintiff's counsel

was appointed, there was still a delay from May 9, 2022 (the date of recruitment), until February 9, 2023, before seeking leave to amend. Moreover, even though Plaintiff was aware of the elapsed deadline to amend and the impending discovery deadline, Plaintiff still did not file the instant motion to amend until prompted by the Court (Doc. 137). In addition, the barebones assertions in the motion to amend merely recite Rule 15's liberal standard for allowing amendments (Doc. 140 at pp. 1-2). Without providing any justification or supporting basis to explain the lengthy delay or put it in context, the Court simply is without the requisite information to find good cause and thus Plaintiff has failed to carry his burden. For these reasons, the Court finds Plaintiff failed to establish good cause to amend his complaint. *See Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022) ("Generally speaking, it is reasonable to conclude that a plaintiff is not diligent when he in silence watches a deadline pass even though he has good reason to act or seek an extension of the deadline.").

Moreover, even if Plaintiff established good cause, Plaintiff's motion still fails to demonstrate why "justice so requires" allowing him leave to amend under Rule 15(a). *See Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002) ("[C]ourts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion[.]"); *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) ("The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court."). Under Rule 15(a), "a district court is within its discretion to deny leave to amend when it has a 'good reason' for doing so, such as futility, undue delay, prejudice to another party, or bad-faith conduct." *Allen*,

41 F.4th at 853. In this case and as previously noted, Plaintiff's motion to amend does not address the undue delay and resulting prejudice in seeking leave to amend, which is evident here. Allowing Plaintiff leave to amend at this stage of the case would require re-opening and expanding discovery and result in additional delay and burden on the Defendants and the Court. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014) ("The issue of undue delay generally arises when a plaintiff seeks leave to amend deep into the litigation. The underlying concern is the prejudice to the defendant rather than simple passage of time."); *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) ("[E]leventh hour additions . . . are bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants.") (citation omitted). Additionally, having thoroughly reviewed Plaintiff's proposed amended complaint, the Court finds the proposed amended complaint would either expand or change the direction of the litigation on certain claims, thereby prejudicing Defendants *See Allen*, 41 F.4th at 853-854 (holding the plaintiff's proposed second amended complaint was likely to result in prejudice because it came late in litigation as discovery was coming to a close and threatened to take the litigation in a new direction). Moreover, Plaintiff's motion to amend does not even recognize the fact that the proposed amended complaint would expand or change the direction on certain claims nor does it offer any basis for doing so. Even in cases where the district court has failed to explain its basis for denying a motion to amend, the Seventh Circuit has held the district court's denial was not an abuse of discretion when "the delay and prejudice that would result from such

amendment was apparent." *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999).

For these reasons, Plaintiff's motion for leave to amend (Doc. 140) is DENIED.[6]

## CONCLUSION

For the reasons discussed above, the Wexford Defendant's motion for judgment on the pleadings (Doc. 120) is **DENIED**. Plaintiff's motion for leave to file his first amended complaint (Doc. 140) is also **DENIED**.

**IT IS SO ORDERED.**

**DATED: August 1, 2023**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

---

[6] Plaintiff's motion to amend makes clear that Plaintiff intends to dismiss Defendant Siddiqui (Doc. 140 at p. 1). The Wexford Defendants do not object to the dismissal of Defendant Siddiqui (Doc. 141 at p. 2). Since the Court has declined to grant Plaintiff leave to file the proposed amended complaint and in order to effectuate the dismissal of Defendant Siddiqui Plaintiff may file a motion to voluntarily dismiss Defendant Siddiqui, which the Court can grant to its inherent authority. *See* 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2362 (4th ed.) ("The power to drop some plaintiffs or defendants from the suit plainly exists, either explicitly in the Federal Rules or in the district court's inherent power."); *Jose-Nicolas v. Berry*, 2018 WL 1466769, at *3-4 (S.D. Ill. Mar. 2, 2018) (relying upon the Court's inherent powers to dismiss a defendant and explaining that requiring additional filings would be inefficient and could result in unnecessary delays and expenses).