IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CORTEZ LARNELL MOORE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:19-CV-01206-MAB |
| | ) |
| **JOHN BALDWIN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is before the Court on three motions: (1) a motion for summary judgment initially filed on behalf of Defendant Wexford Health Sources and Defendant Dr. Mohammed Siddiqui (Doc. 152); (2) a motion to strike initially filed on behalf of Wexford and Dr. Siddiqui (Doc. 159); and (3) a motion for out of pocket expenses filed by *pro bono* counsel representing Plaintiff Cortez Moore (Doc. 165). After the motion for summary judgment and the motion to strike were filed by Dr. Siddiqui and Wexford, Dr. Siddiqui was dismissed with prejudice on January 3, 2024 (*see* Doc. 164). Accordingly, the arguments regarding Dr. Siddiqui in the motion for summary judgment have been RENDERED MOOT in light of his dismissal. And for the reasons explained below, the motion for summary judgment on behalf of Wexford (Doc. 152) is GRANTED; the motion to strike (Doc. 159) is DENIED as MOOT and the motion for out of pocket expenses (Doc. 165) is GRANTED.

### BACKGROUND

I. *The alleged assault and Plaintiff's injuries:*

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 on November 4, 2019, for alleged deprivations of his constitutional rights while he was incarcerated at Menard Correctional Center (Docs. 1, 15). Plaintiff alleges that on June 14, 2017, Lieutenant Trokey placed him in handcuffs and then verbally and physically assaulted him while other officers observed and did not intervene (Doc. 15 at p. 2). After the alleged assault, Plaintiff sought medical attention for, among other things, a head injury that he believed to be a concussion (*Id.*; *see also* Doc. 153, p. 2; Doc. 156, p. 2). However, Plaintiff was not taken to receive medical care until June 16, 2017 (Doc. 153 at p. 2; Doc. 156 at p. 2). On that date, Plaintiff met with a nurse in the healthcare unit, who referred him to see a doctor (Doc. 153 at p. 2; Doc. 156 at p. 2).

Thereafter, Plaintiff met with Dr. Shah on July 28, 2017, to address his head injury that allegedly occurred during the June 14 assault (Doc. 153 at p. 3; Doc. 156 at p. 3). Dr. Shah conducted a neurological examination but did not submit Plaintiff for an MRI and did not diagnose Plaintiff with a concussion (Doc. 15 at p. 2; Doc. 153 at p. 3; Doc. 156 at p. 3). Plaintiff also alleges that the doctor told him he was not seen sooner because Menard was understaffed and did not have enough doctors (Doc. 1 at pp. 16-17; Doc. 15 at pp. 2-3). Following that visit, the parties dispute whether Plaintiff continued to complain of headaches and other symptoms related to his alleged concussion (*compare* Doc. 153 at p. 3, *with* Doc. 156 at pp. 3-4).

After filing this action in November 2019, the Court conducted a threshold review

pursuant to 28 U.S.C. § 1915A (Doc. 15). As detailed in that Order, Plaintiff was permitted to proceed on the following claims:

> **Count 1:** Lieutenant Trokey used excessive force against Plaintiff in violation of the Eighth Amendment;
>
> **Count 2:** Sergeant Macuria, C/O Burshur, John Doe #1, and John Doe #21 failed to intervene to stop Lieutenant Trokey's use of force in violation of the Eighth Amendment;
>
> **Count 3:** Lieutenant Trokey, Sergeant Macuria, C/O Burshur, John Doe #1, and John Doe #2 retaliated against Plaintiff in violation of the First Amendment because Plaintiff submitted grievances;
>
> **Count 4:** Lieutenant Trokey, Sergeant Rowes, and Dr. Siddiqui were deliberately indifferent to Plaintiff's need for medical treatment in violation of the Eighth Amendment;
>
> **Count 5:** John Baldwin, Jacqueline Lashbrook, and Wexford had unconstitutional policies of understaffing the healthcare unit, refusing outside care, and cancelling call passes which were in violation of the Eighth Amendment (Doc. 15, pp. 4-5).

Thereafter, Defendants moved for summary judgment, arguing Plaintiff failed to exhaust his administrative remedies before filing this action (Docs. 47, 48, 51, 52). Plaintiff filed his response in opposition to Defendants' motions in September 2020 (Docs. 60, 62). On January 29, 2021, the Court denied Defendants' exhaustion-based motions for summary judgment (Doc. 69). Specifically, "the Court conclude[d] based on the totality of the evidence that the grievance process was rendered unavailable to Plaintiff with respect to the June 14 and July 24, 2017 grievances and he is deemed to have exhausted these two grievances." (*Id.* at p. 25).

On February 14, 2022, Plaintiff filed a motion for recruitment of counsel (Doc. 87). The Court granted the motion (Doc. 88), which led to Plaintiff being represented by his

current counsel on May 9, 2022, and July 21, 2022 (Docs. 104, 105, 112). Subsequently, Defendants Wexford and Dr. Siddiqui filed a motion for judgment on the pleadings (Doc. 120), which was denied on August 1, 2023 (Doc. 143). Additionally, Plaintiff filed a motion for leave to file an amended complaint, which was also denied by the Court on August 1, 2023 (*Id.*).

While the motion for judgment on the pleadings was pending, Plaintiff filed a motion for settlement conference (Doc. 134). The IDOC Defendants indicated interest in settlement discussions, but Wexford and Dr. Siddiqui objected to any such discussions (Docs. 135, 136). Consequently, the Court directed the IDOC Defendants to attend a mediation session with Plaintiff (Doc. 145). That mediation session proved to be fruitful, as Plaintiff settled his claims against the IDOC Defendants (*see* Docs. 150, 151).

Thereafter, Wexford and Dr. Siddiqui filed the instant motion for summary judgment (Docs. 152, 153). Plaintiff filed a response in opposition and supporting exhibits on December 8, 2023 (Doc. 156). At the same time, Plaintiff moved to voluntarily dismiss Dr. Siddiqui because, as Plaintiff admits, Dr. Siddiqui was mistakenly identified as the doctor who treated him (*see* Doc. 156, p. 1 at fn. 1). After allowing for additional briefing, Dr. Siddiqui was dismissed with prejudice on February 3, 2024 (Doc. 164).

Meanwhile, on December 15, 2023, Wexford moved to strike an exhibit that Plaintiff attached to his response in opposition to their motion for summary judgment (Doc. 159). Specifically, Wexford sought to strike Plaintiff's Exhibit H (Doc. 156-8), which contained several pages of a monitoring report prepared by the John Howard Association following a 2021 visit to Menard (hereinafter, the "JHA Report") (Doc. 159 at p. 1).

Wexford argued the report should be stricken because: (1) it was not produced during discovery; and (2) it contains inadmissible hearsay (*Id.* at pp. 4-9). Plaintiff filed a response in opposition on December 19, 2023 (Doc. 160).

Finally, Plaintiff's *pro bono* counsel filed a motion for out of pocket expenses on April 17, 2024 (Doc. 165). The Court found the motion to be premature and held it in abeyance because Plaintiff's claims against Wexford were still pending (Doc. 167).

### WEXFORD'S MOTION FOR SUMMARY JUDGMENT (DOC. 152)

1. *Summary Judgment Standard:*

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

2. *Deliberate Indifference Claims and Monell Liability*

Plaintiff's only remaining claim is a deliberate indifference claim raised against

Wexford. Specifically, Plaintiff contends that Wexford was deliberately indifferent to his serious medical needs based upon its policy of understaffing the healthcare unit, which led to a delay in him being treated by a doctor (*see* Doc. 15 at p. 5).

In order to maintain a deliberate indifference claim, there must be evidence tending to demonstrate that Plaintiff: (1) suffered an objectively serious medical condition; (2) the defendant knew of that condition and was deliberately indifferent to treating him; and (3) the defendant's deliberate indifference injured him. *See Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 614 (7th Cir. 2022). Additionally, when a deliberate indifference claim is based upon an alleged delay in treatment, that delay "may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal quotation marks and citations omitted).

Furthermore, local governments and private corporations acting under color of state law can be held liable under section 1983 for constitutional torts arising from their own policies or customs. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, municipalities and private corporations such as Wexford cannot be held liable under the theory of *respondeat superior* for the constitutional torts of their agents or employees. *See Id.* at 691. Therefore, to establish Wexford's liability, Plaintiff must challenge conduct that is properly attributable to Wexford itself, as opposed to its employees. *See First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (emphasizing that a municipality can only be held liable for "its own violations").

Crucially, as the Seventh Circuit recently explained:

> For *Monell* liability to attach, [the plaintiff] must first trace the deprivation of a federal right to some municipal action. Municipal action giving rise to § 1983 liability may take the form of: (1) an express policy, (2) a widespread practice or custom, or (3) action by one with final policymaking authority. Second, [the plaintiff] must show the municipal action amounts to deliberate indifference, a high hurdle to clear. Third and finally, [the plaintiff] must provide evidence that the municipal action was the moving force behind [his] constitutional injury, a rigorous causation standard demanding a direct causal link between the challenged municipal action and the violation of [the plaintiff's] constitutional rights.

*Stockton*, 44 F.4th at 617 (internal quotation marks and citations omitted). In other words, "[t]he 'critical question' is whether the municipality had a policy, practice, or policymaker that gave rise to the harm." *Story v. Dart*, No. 19-CV-2476, 2023 WL 2612622, at *6 (N.D. Ill. Mar. 23, 2023) (quoting *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017)).

3. *Analysis:*

Wexford argues it is entitled to summary judgment because, among other things: (1) Plaintiff failed to demonstrate that he was deprived of a constitutional right; and (2) Plaintiff failed to demonstrate that Wexford had a policy or practice of understaffing (Doc. 153 at pp. 10-12). In response, Plaintiff contends that he provided evidence which demonstrates that: (1) he suffered from an objectively serious medical condition that was exacerbated by the delay in receiving treatment; and (2) Wexford was deliberately indifferent to his medical need or condition and had a policy of understaffing and under-scheduling doctors (Doc. 156 at pp. 7-16). Ultimately, summary judgment is warranted here because Plaintiff has failed to provide sufficient, relevant evidence of a Wexford

policy that caused the alleged harm.

The Seventh Circuit addressed a similar challenge in *Stockton v. Milwaukee County*, 44 F.4th 605 (7th Cir. 2022). In that case, Michael Madden was booked into the Milwaukee County Jail after violating his probation. *Id.* at 610-11. During his intake, Madden disclosed that he had a history of drug use and a congenital heart defect. *Id.* Over the next month, Madden was treated on numerous occasions for various complaints including having trouble breathing and heart pain. *Id.* at 611-12. However, medical staff treated Madden based upon the presumption that his issues were related to him suffering from drug withdrawals. *Id.* Tragically, after just one month of confinement, Madden passed away due to infective endocarditis (a heart infection). *Id.* at 612-13.

The administrator of Madden's estate ("the plaintiff") filed suit under 42 U.S.C. § 1983 and advanced, among other theories, a claim of deliberate indifference against Milwaukee County and Armor Correctional Health Services, the company the County contracted with to provide healthcare services to inmates. *Id.* at 613. The district court granted summary judgment to the defendants and the plaintiff appealed. *Id.* On appeal, the plaintiff argued that Milwaukee County was subject to *Monell* liability based upon a widespread practice of failing to maintain staffing levels and process sick call slips in a timely manner. *Id.* at 617. However, the Seventh Circuit rejected the plaintiff's argument because the plaintiff failed to point to evidence of other inmates injured by the County's alleged widespread practice. *Id*. As the court explained, "[a]bsent multiple injuries, [the plaintiff] cannot supply adequate evidence from which a jury could reasonably find Armor and Milwaukee County would conclude that the plainly obvious consequences of

the practice would result in the deprivation of a federally protected right, as is required to establish deliberate indifference." *Id.* (internal quotation marks and citations omitted).

Furthermore, the Seventh Circuit rejected the plaintiff's attempt to rely upon biannual reports, known as the "Shansky Reports," which documented Armor Correctional Health Services and Milwaukee County's struggle to meet medical staffing levels. *Id.* at 617-18. In addition to warning that the Shansky Reports were likely inadmissible hearsay, the court found the reports were insufficient to establish *Monell* liability because they did not connect the County's failure to maintain staffing levels with any inmate injury. *Id.* The court also rejected the plaintiff's *Monell* liability claim because the plaintiff did not cite to evidence "that medical staffing levels or sick call slip processing caused Madden to receive constitutionally inadequate medical care. Consequently, [the plaintiff's] claim for *Monell* liability fails to establish moving force causation." *Id.* at 618. The Seventh Circuit further explained that it was "not convinced a jury could reasonably conclude a timely response by MCJ medical staff to Madden's allergy complaint would have led to the correct diagnosis or treatment for infective endocarditis." *Id.*

Here, as in *Stockton*, there is simply not sufficient evidence for Plaintiff to make a showing of either deliberate indifference or moving force causation. For one, the only evidence of Wexford's alleged policy of understaffing comes from the JHA Report (*see* Doc. 156-8). Setting aside the issue of whether the JHA Report is inadmissible hearsay, the Court believes the report fails to support Plaintiff's claim for several reasons – first

and foremost, that it simply is not relevant to the issues in this case.[1] The report was prepared based upon a September 2021 visit to Menard by the John Howard Association (*see* Doc. 156-8; *see also* Doc. 160-1 (containing the full JHA Report)). That visit occurred more than *four years after* the events giving rise to this action took place and after a global pandemic. As such, even if the JHA Report provided evidence of a Wexford policy of understaffing, given the significantly changed circumstances between 2017 and 2021, the 2021 report does not provide any evidence of a policy of understaffing in 2017. *See, e.g., Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 239 (7th Cir. 2021) (holding that even if a 2014 report provided notice to Wexford that its prior policy would cause constitutional violations, it did not provide notice that Wexford's updated policy suffered from the same deficiencies). Moreover, the Court is not convinced that the JHA Report provides evidence of a policy decision made by Wexford to understaff its medical facilities in 2021. In fact, the JHA report discussed a new approach that had been taken to minimize healthcare shortages by allowing for incarcerated healthcare aides (*see* Doc. 156-8 at p. 4). Additionally, the JHA Report expressly stated that Menard requested updates from Wexford regarding vacancies "despite recruitment efforts" and that Wexford had posted several new medical position openings (*Id.*). Tellingly, in order to establish municipal

---

[1] Here, the Court need not even consider whether the JHA Report is hearsay because it simply has no relevance to the issues in this lawsuit as it was prepared four years after the events at issue in this case. *See, e.g., Dean*, 18 F.4th at 233 (Avoiding directly answering the question of whether a 2018 report was inadmissible hearsay that was offered to prove the truth of its contents because, among other reasons, the 2018 report was irrelevant since it "could not have put Wexford on notice regarding its actions prior to 2018 or affected Wexford's decision to maintain collegial review in 2015, 2016, or 2017."); *Feazell v. Wexford Health Sources*, No. 19-CV-1340-KLM, 2024 WL 1237055, at *4 (C.D. Ill. Feb. 23, 2024) (Holding a 2022 report was irrelevant to demonstrating that Wexford had notice of deficiencies because the report had been prepared "after the events at issue in this case.").

fault, "[i]f a municipality's action is not facially unconstitutional, the plaintiff must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality *consciously disregarded those consequences*." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (emphasis added) (internal quotation marks and citations omitted); *see also Armstrong v. Squadrito*, 152 F.3d 564, 579 (7th Cir. 1998) (jail's backup complaint procedure related to the will call system demonstrated that the jail was aware of the problem and had attempted to avoid further injuries caused by that problem, and therefore, the jail's will call procedure did not demonstrate deliberate indifference). Accordingly, given Wexford's recruiting efforts (and without any evidence suggesting those efforts were disingenuous), the JHA Report may actually provide some evidence that Wexford was not consciously disregarding the consequences of understaffing in 2021.

Second, just as in *Stockton*, while the JHA report does mention a few instances of inmates reporting that they received inadequate medical care, none of those reports directly claim that the lack of adequate medical care was due to understaffing (*see generally* Doc. 156-8); 44 F.4th at 617-18. Without connecting the purported injuries discussed in the JHA Report directly to staffing deficiencies, the report does not provide evidence that a Wexford policy of understaffing resulted in the deprivation of a federally protected right. *See id.* Moreover, Plaintiff has not provided any evidence of inmate's suffering constitutional violations due to Wexford's policy of understaffing, other than his own allegations and those contained in the JHA report. Accordingly, Plaintiff has failed to demonstrate that Wexford was deliberately indifferent based upon an alleged

policy of understaffing.

Similarly, Plaintiff has failed to demonstrate that medical staffing shortages even existed and were what caused him to receive constitutionally inadequate care. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010) ("A governmental body's policies must be the *moving* force behind the constitutional violation before we can impose liability under *Monell*."). In fact, Plaintiff has not presented any evidence of what would or would not constitute sufficient medical staffing levels at Menard in 2017. And without evidence that understaffing was occurring, the Court questions how Plaintiff can demonstrate that he was injured due to Wexford's alleged policy of understaffing.[2]

Moreover, the Court can imagine numerous reasons why Plaintiff's appointment with a doctor at Menard may have been delayed due to reasons other than understaffing, from error on the part of the nurse who processed Plaintiff's referral to the treating doctor's own erroneous delays or actions. But the Court need not speculate on the reason for the delay. What is critical is that Plaintiff has not presented sufficient evidence demonstrating or reasonably inferring that: (1) Wexford was understaffed at the time in question, based upon its policy of such; and (2) that Wexford's understaffing of medical facilities was the actual reason he was not seen sooner. *See Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) ("The critical question under *Monell* remains this: is the

---

[2] Plaintiff did cite to some evidence documenting medical staffing levels at Menard in 2017 (*See, e.g.*, Doc. 156 at p. 4; Doc. 156-9). However, without any evidence as to what actually constituted an adequate amount of medical staffing at Menard in 2017, Plaintiff's own subjective beliefs as to what demonstrates inadequate medical staffing is pure conjecture and cannot be considered evidence.

action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?").

Finally, Plaintiff's claim also fails because there is no evidence that the delay in being treated is what caused or exacerbated his injuries. Although Plaintiff acknowledges that he must provide evidence that the delay exacerbated his injury or unnecessarily prolonged his pain (Doc. 156 at p. 12), Plaintiff fails to cite to any medical evidence demonstrating the delay's adverse impacts. Instead, Plaintiff points to evidence which he claims demonstrates that he did not receive proper medical treatment for a suspected concussion (*see Id.* at pp. 12-14). Regardless of whether that claim is true, in order to hold Wexford liable for the alleged harm caused by delaying his treatment, there must be evidence to demonstrate that *the delay* actually exacerbated Plaintiff's injury or unnecessarily prolonged his pain. And on this point, there simply is no evidence to connect the dots. It is true that Plaintiff provided some evidence that he suffered for years to come following his head injury (*see, e.g.*, Doc. 156-5). However, evidence of Plaintiff's prolonged pain, without more, is not the same as evidence that Plaintiff's prolonged pain was caused by the delay in seeing a doctor. This distinction is critical because it would be improper for a jury to hold Wexford responsible for Plaintiff's prolonged pain and suffering if Plaintiff would have experienced that same pain and suffering had he been seen by a doctor right away. *See Swanigan v. Obaisi*, No. 15 C 6797, 2017 WL 5129001, at *4 (N.D. Ill. Nov. 6, 2017) ("Arguably more troubling is the two-month delay between Dr. Obaisi's recommendation for physical therapy on May 27, and the beginning of therapy on August 6. Swanigan does not, however, offer any evidence that this delay exacerbated

the injury or unnecessarily prolonged pain.") (internal quotation marks and citations omitted).

For all these reasons, the Court GRANTS Wexford's Motion for Summary Judgment (Doc. 152).

## MOTION TO STRIKE (DOC. 159)

Wexford has also filed the instant motion to strike, which seeks to strike the JHA Report because it was not disclosed during discovery[3] and contains inadmissible hearsay (*see generally* Doc. 159). Ultimately, because of the Court's decision to grant Wexford's motion for summary judgment, this motion is DENIED as MOOT (Doc. 159).[4]

## MOTION FOR OUT OF POCKET EXPENSES (DOC. 165)

Lastly, Plaintiff's *pro bono* counsel filed the instant motion requesting reimbursement of out of pocket *pro bono* expenses in the amount of $3,206.91 (Doc. 165). The Court has held this motion in abeyance until the conclusion of this action (Doc. 167). As all claims in this case have now either settled or been dismissed, the Court considers the motion.

---

[3] Specifically, Wexford argues the report should be stricken because it was not properly disclosed during discovery (Doc. 159 at pp. 4-6). In response, Plaintiff contends that the report: (1) was not responsive to any discovery request; (2) was provided in a timely fashion as soon as Plaintiff discovered it; and (3) is admissible pursuant to Rule 37(c)(1) because any failure to disclose on Plaintiff's part was substantially justified and harmless (Doc. 160 at pp. 1-4). The Court declines to delve into this analysis because, regardless of whether the report was properly disclosed, the report is irrelevant and does not impact the Court's summary judgment determination.

[4] Wexford also requests attorney's fees for preparing its motion to strike (*see* Doc. 159 at p. 3). However, pursuant to Rule 37(c), such a request generally falls within the Court's discretion. *See Taylor v. Cook Cnty. Sheriff's Off.*, No. 13 C 1856, 2018 WL 4101510, at *3 (N.D. Ill. Aug. 28, 2018) ("Failure to make a timely Rule 26(a)(1) disclosure is sanctionable under Rule 37(c) unless the non-disclosure was substantially justified or harmless."). Here, in light of both the Court's decision to grant Wexford's motion for summary judgment and deny Wexford's motion to strike as moot (Doc. 160), the Court DENIES Wexford's request and declines to award attorney's fees.

The Plan for the Administration of the District Court Fund allows reimbursement of out of pocket expenses of up to $5,000, as funds are available. *See* Section 2.6 of the Plan for Administration of the District Court Fund. Because the expenses appear to be reasonable in light of the work counsel accomplished, the Court finds it appropriate to allow reimbursement of $3,206.91. Therefore, the motion is GRANTED (Doc. 165). The Court APPROVES reimbursement in the amount of $3,206.91 and DIRECTS the Clerk of Court to reimburse counsel for that amount from the District Court Fund. The Court sincerely thanks Mr. Keane and Mr. Kirksey for their service on this case.

## CONCLUSION

For the reasons discussed above, Wexford's motion for summary judgment is GRANTED (Doc. 152); Wexford's motion to strike is DENIED as MOOT (Doc. 159); and Plaintiff's motion for out of pocket expenses is GRANTED (Doc. 165). Additionally, because Plaintiff has settled or dismissed his claims against all other Defendants (*see* Docs. 151, 164), this case is **DISMISSED with prejudice.**

The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket. The Clerk of Court is also **DIRECTED** to reimburse Plaintiff's counsel in the amount of $3,206.91 from the District Court Fund.

**IT IS SO ORDERED.**

**DATED: May 10, 2024**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**