**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CORTEZ LARNELL MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:19-CV-01206-MAB** |
| | ) | |
| **JOHN BALDWIN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM AND ORDER**</u>

**BEATTY, Magistrate Judge:**

Presently before the Court is Defendants Mohammed Siddiqui, M.D., and Wexford Health Sources' Motion for Sanctions (hereinafter, "Defendants") (Doc. 172). For the reasons set forth below, Defendants' Motion for Sanctions is DENIED.

<u>B</u>ACKGROUND

Plaintiff Cortez Moore filed this action pursuant to 42 U.S.C. § 1983 on November 4, 2019, for alleged deprivations of his constitutional rights while he was incarcerated at Menard Correctional Center (Docs. 1, 15). Plaintiff's Complaint alleges that he was verbally and physically assaulted on June 14, 2017, while incarcerated at Menard (Doc. 15 at p. 2). Plaintiff sought medical care for his injuries following the assault (Doc. 1 at pp. 14-15; Doc. 15 at p. 2). However, Plaintiff was not taken to receive medical care until June 16, 2017 (Doc. 1 at p. 14). On that date, Plaintiff met with a nurse who gave him some ibuprofen and referred him to see a doctor (Doc. 1 at pp. 14-15).

Plaintiff subsequently met with Dr. Shah on July 28, 2017, to address his head injury from the alleged assault on June 14, 2017 (Doc. 15 at p. 2). Dr. Shah conducted a

neurological examination but did not submit Plaintiff for an MRI or diagnose him with a concussion (Doc. 15 at pp. 2-3). Plaintiff also alleges that Dr. Shah told him that he was not seen sooner because Menard was understaffed and did not have enough doctors (Doc. 15 at p. 2).

The Court conducted a threshold review pursuant to 28 U.S.C. § 1915A and, as it relates to Defendants Wexford and Dr. Siddiqui, Plaintiff was permitted to proceed on the following claims:

> **Count 4:** Lieutenant Trokey, Sergeant Rowes, and Dr. Siddiqui were deliberately indifferent to Plaintiff's need for medical treatment in violation of the Eighth Amendment;

> **Count 5:** John Baldwin, Jacqueline Lashbrook, and Wexford had unconstitutional policies of understaffing the healthcare unit, refusing outside care, and cancelling call passes which were in violation of the Eighth Amendment (Doc. 15 at pp. 4-5).

On June 11, 2020, Defendants Wexford and Dr. Siddiqui filed a motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies, along with a supporting memorandum and exhibits (Docs. 47, 48). In that exhaustion-based summary judgment motion, Defendants argued that a "review of the evidence shows that Dr. Siddiqui was not the treating doctor that is the subject of this grievance." (Doc. 48 at pp. 10, 15). The Court denied Defendants' motion by Order dated January 29, 2021, for the reasons stated therein (Doc. 69). Pertinently, the Court's Order also explained that:

> Part of the issue, and perhaps at the heart of the Wexford Defendants' argument, is that it appears that Defendant Siddiqui was possibly not the medical professional who saw Plaintiff for his injuries (*See* Docs. 48-4, 48-5, 48-6). While the Wexford Defendants' exhibits support this argument, these

are merits-based arguments more suited for a merits-based motion for summary judgment and not appropriately before the Court on the issue of exhaustion (Doc. 69 at p. 24).

On January 29, 2021, a final scheduling order was entered and this case proceeded to discovery on the merits (Doc. 70). During discovery, Defendants produced additional records that appear to demonstrate that Dr. Siddiqui was not the physician who treated Plaintiff on July 28, 2017 (*see, e.g.*, Doc. 120-2 at pp. 3-4). On or around December 1, 2021, Dr. Siddiqui responded to Plaintiff's interrogatories, stating, "I do not schedule prisoners to be seen and, per the medical records, I never saw Plaintiff for his complaints in this matter." (Doc. 120-4 at p. 6). Just a few days later, Defendants took Plaintiff's deposition (Doc. 120-1). During Plaintiff's deposition, the following exchange occurred:

> *Defense Counsel*: Oh, okay. Do you know who Dr. Siddiqui is?
>
> *Plaintiff*: Do I know who he is? Well, I know he was a doctor or M.D., and sometime, during my incarceration at Menard, he was the head doctor.
>
> *Defense Counsel*: Do you know if you've ever seen him before?
>
> *Plaintiff*: Probably have at some point. I can't say with -- I believe at some point I've seen him, being in the hospital, being in Menard hospital.
>
> *Defense Counsel*: And when you say you've seen him, did you just see him in passing, or do you believe that he actually treated you?
>
> *Plaintiff*: It could have been in passing.
>
> *Defense Counsel*: Why did you name him in the lawsuit?
>
> *Plaintiff*: Because I know, at some point, he was the doctor. That's the only doctor I knew at that time, that was actually at Menard. (Doc. 120-1 at pp. 39-40).

Later in Plaintiff's deposition, Plaintiff was again asked about Dr. Siddiqui:

*Defense Counsel*: Do you still intend to have Dr. Siddiqui as a defendant in this case, since he's not the doctor you saw?

*Plaintiff*: I know, at some point, he was the doctor there. I'm not sure if he was the acting doctor at the point in time that the incident actually occurred. (Doc. 120-1 at p. 60).

Shortly after, on December 29, 2021, Defendants sent Plaintiff a letter requesting he voluntarily dismiss Dr. Siddiqui because he was not the doctor who treated Plaintiff (Doc. 120-5 at p. 1). Defendants sent Plaintiff another letter asking him to voluntarily dismiss Dr. Siddiqui on February 16, 2022 (Doc. 120-5 at p. 2).

Meanwhile, on February 14, 2022, Plaintiff filed a motion for recruitment of counsel, which the Court granted roughly one week later (Doc. 88). Over the next two months, several attorneys were appointed by the Court to represent Plaintiff, but then relieved from their assignments for good cause (*see* Docs. 89, 92, 94, 98). Finally, on April 25, 2022, Attorney Ryan A. Keane was assigned to represent Plaintiff (Doc. 104). Mr. Keane made his appearance on May 9, 2022 (Doc. 105)[1] and, according to Defendants, he received all discovery documents and correspondence over the next two days (Doc. 172 at p. 4).

A status conference was held on July 7, 2022, and the Court directed Defendants to provide Mr. Keane with a copy of the transcript from Plaintiff's deposition (Doc. 110). Defense counsel did so that same day via email (Doc. 120-6). Eleven minutes later, Defense counsel sent a follow-up email specifically directing Plaintiff's counsel to the portions of Plaintiff's deposition wherein he discussed Dr. Siddiqui (Doc. 120-6).

---

[1] On July 21, 2022, Attorney Tanner A. Kirksey also entered an appearance on behalf of Plaintiff (Doc. 112).

According to Defendants, they continued to request Dr. Siddiqui's voluntary dismissal over the next few months (Doc. 172 at p. 5).

On September 20, 2022, Plaintiff's counsel took the deposition of Dr. Shah (Doc. 120-7). Dr. Shah testified that he typically worked ten-hour shifts as a medical doctor at Menard and he would sometimes work with the medical director, but he did not know the number of medical staff that worked at Menard in 2017 (Doc. 120-7 at pp. 14-16). Dr. Shah subsequently testified that he had no independent recollection of seeing Plaintiff, but he later testified that according to medical records, he saw Plaintiff for the first time on July 20, 2017 (Doc. 120-7 at pp. 78-80).[2] A status conference was held before the Court on October 6, 2022 (Doc. 119). At that conference, Defense counsel stated their belief that Dr. Siddiqui was wrongly named to this suit (Doc. 119). Plaintiff's counsel responded that they needed to conduct additional due diligence before making a final decision as to whether to voluntarily dismiss Dr. Siddiqui (Doc. 119). Additionally, Plaintiff's counsel indicated their intent to depose Dr. Siddiqui and an IDOC corporate representative, which Defendants opposed (Doc. 172 at p. 5).

Defendants filed a Motion for Judgment on the Pleadings and for Protective Order on October 27, 2022 (Doc. 120). In addition to arguing that they were entitled to judgment

---

[2] Dr. Shah was asked whether July 20, 2017, was the first time he saw Plaintiff. Dr. Shah responded, "I don't recollect, but looking at the file, yes." (Doc. 120-7 at p. 80). Shortly thereafter, when discussing the date of a medical order, Dr. Shah affirmatively stated the order looked to be dated from July 20, 2017 (Doc. 120-7 at p. 82), before subsequently changing his position and stating, "it looks like 28 now." (Doc. 120-7 at p. 85). Ultimately, while this may have come down to difficulties in reading handwriting on medical forms (something the Court is familiar with), the Court denotes this point because, at a minimum, it raises questions as to the reliability of Dr. Shah's testimony as to when he saw Plaintiff, especially since Dr. Shah admitted to having no independent recollection of when he saw Plaintiff (Doc. 120-7 at p. 80).

on the pleadings because of the applicable statute of limitations, Defendants' motion argued that the Court should issue a protective order because Plaintiff's claim against Dr. Siddiqui was unsupported in fact and law (Doc. 120 at pp. 5-10). Defendants also argued that Plaintiff's claim against Wexford was unsupported because the evidence demonstrated that six doctors had worked at Menard in June and July of 2017 (Doc. 120 at p. 11). In support of their arguments, Defendants attached numerous filings including medical records, Plaintiff's deposition testimony, Defense counsel's letters to Plaintiff requesting Dr. Siddiqui's dismissal, interrogatory answers, and Dr. Shah's testimony (*see generally* Docs. 120-1 through 120-8).

Plaintiff filed a response in opposition on November 7, 2022, which argued that Defendants' motion for protective order was improper, as it really sought a dismissal of Dr. Siddiqui as opposed to an order protecting him from annoyance, embarrassment, oppression, or undue burden or expense (Doc. 126 at p. 10).[3] Plaintiff further responded that even assuming Dr. Siddiqui did not treat Plaintiff, he could still be liable if he knew of Plaintiff's situation and need for medical treatment, and then deliberately or recklessly disregarded Plaintiff's constitutional rights by failing to act (Doc. 126 at pp. 10-11). Plaintiff also emphasized that the medical records relied upon by Defendants demonstrated that Dr. Siddiqui was working on June 14, 2017, as well as many of the days thereafter (Doc. 126 at pp. 11-12). Thus, Plaintiff claimed that deposing Dr. Siddiqui

---

[3] Plaintiff's response also argued that, "Ironically, the discovery Defendants seek to block may lead to the very thing Defendants Wexford and Dr. Siddiqui want; a dismissal. Plaintiff's counsel has communicated to Defendants' counsel on multiple occasions that due diligence requires additional discovery, but if the facts and evidence cease to support a claim against her clients, that Plaintiff will not be blind to same." (Doc. 126 at p. 8, fn. 2).

could help determine whether Dr. Siddiqui was liable based upon his potential refusal or failure to promptly treat Plaintiff after his injuries occurred (Doc. 126 at p. 12). In reply, Defendants argued that the evidence demonstrates that Plaintiff was not sent to healthcare on June 14, 2017, and his allegations against the doctor were solely related to his visit on July 28, 2017 (*see* Doc. 128).

The Court held a hearing on the dispute and Defendants' related motion on November 23, 2022 (Doc. 129). A few days later, the Court issued the following Order, which stated in pertinent part:

> ORDER: The Plaintiff requested a case management conference with the Court on October 27, 2022 (Doc. 121), which the Court granted and held on November 23, 2022 (See Doc. 129). While the Court understood the parties had a dispute involving the Defendant, Dr. Siddiqui, the Court was unaware as to the precise substance of the dispute and the background surrounding it. As the Court sees it, the dispute is summarized as follows: the Plaintiff seeks the deposition of Dr. Siddiqui, who is a Defendant in this case. Dr. Siddiqui's counsel objects, and claims that the deposition is sought for an improper purpose (i.e. oppression, undue burden, etc.). In June of 2020, Dr. Siddiqui submitted an affidavit in support of a motion for summary judgment based on exhaustion that avers that he reviewed the medical records and that he did not treat Plaintiff on July 28, 2017 (Doc. 48-5). However, defendants have since produced timesheets that demonstrate Dr. Siddiqui was working on June 14, 2017, the date of the initial incident at issue (Doc. 126-1). On this basis, and the allegations of the complaint, the Court denies in part Defendant Dr. Siddiqui's motion for protective order (Doc. 120). Plaintiff is granted leave to depose Dr. Siddiqui for not more than 90 minutes. The questions are limited in scope to Dr. Siddiqui's alleged actions or inactions on June 14, 2017, and the days and weeks immediately following June 14, 2017, as well as any alleged treatment Plaintiff received from Dr. Siddiqui relative to the facts of the complaint.... (Doc. 130).

On December 22, 2022, Plaintiff filed a status report following Dr. Siddiqui's deposition (Doc. 131). In that report, Plaintiff remarked that Dr. Siddiqui's testimony appeared to contradict some of his prior discovery responses, thereby calling his veracity

into question (Doc. 131 at pp. 1-2). However, Plaintiff reiterated that "he is attempting to continue as due diligence requires, and that if the facts and evidence (together now with Dr. Siddiqui's testimony) cease to support a claim against Defendant, Plaintiff will not be blind to same." (Doc. 131 at p. 2, fn. 2). Additionally, Plaintiff indicated that he was preparing a proposed First Amended Complaint and Motion for Leave (Doc. 131 at p. 2).

On January 18, 2023, Plaintiff filed a motion for settlement conference (Doc. 134). The state Defendants represented by the Illinois Attorney General's Office expressed a desire to attend a settlement conference (Doc. 135). Conversely, Defendants Dr. Siddiqui and Wexford responded that they did not wish to attend a settlement conference because, among other reasons, they believed Plaintiff's claims against Dr. Siddiqui and Wexford were fruitless and "Plaintiff [was] holding the claims against Defendants hostage as leverage for participation in a settlement conference." (Doc. 136 at p. 4). Consequently, a settlement conference was held solely between Plaintiff and the state Defendants, which resulted in Plaintiff settling his claims against those Defendants (Docs. 145, 150, 151).

Meanwhile, on February 3, 2023, the Court entered a case management order that addressed the dispute between Plaintiff and Defendants related to Dr. Siddiqui (Doc. 137). In that Order, the Court wondered whether Plaintiff's claim against Dr. Siddiqui could proceed in light of the medical records and Dr. Siddiqui's assertion that he did not treat Plaintiff (Doc. 137 at p. 2).[4] Accordingly, the Court ordered Plaintiff to file a motion for leave to amend on or before February 10, 2023, if he sought to amend his complaint

---

[4] The Court also questioned whether Plaintiff's claim against Wexford remained viable if Plaintiff conceded that he did not have a case against Dr. Siddiqui (Doc. 137 at p. 2, fn. 1).

(Doc. 137 at pp. 3-4).

In accordance with the Court's order, Plaintiff filed a Motion for Leave to File First Amended Complaint on February 9, 2023 (Doc. 140). Notably, Plaintiff's motion stated that his amended complaint would dismiss Dr. Siddiqui (Doc. 140 at p. 1). Defendants opposed Plaintiff's motion, arguing Plaintiff should not be permitted to amend his complaint more than two and a half years after the deadline to file an amended complaint had passed (Doc. 141 at p. 1). However, Defendants also indicated that they did not object to the dismissal of Dr. Siddiqui (Doc. 141 at p. 2).

The Court denied Plaintiff's motion for leave to amend by Order dated August 1, 2023 (Doc. 143). Pertinently, the Court found Plaintiff's motion failed to establish good cause for seeking an amendment at such a late stage of proceedings and also failed to address the prejudice that would result from permitting Plaintiff to amend his complaint (Doc. 143 at pp. 16-17). Regarding Dr. Siddiqui's potential dismissal, the Court explained that, "[s]ince the Court has declined to grant Plaintiff leave to file the proposed amended complaint and in order to effectuate the dismissal of Defendant Siddiqui, Plaintiff may file a motion to voluntarily dismiss Defendant Siddiqui[.]" (Doc. 143 at p. 18, fn. 6).

Wexford and Dr. Siddiqui filed a Motion for Summary Judgment, along with a supporting memorandum and exhibits on October 25, 2023 (Docs. 152, 153). On December 8, 2023, Plaintiff filed both a response to Defendants' Motion for Summary Judgment (Doc. 156) and a Notice of Voluntary Dismissal, which requested the Court dismiss Dr. Siddiqui without prejudice (Doc. 157). The Court then entered an Order deferring ruling on the Notice of Dismissal because it sought a dismissal of Dr. Siddiqui

without prejudice (*see* Docs. 157, 158). The Court reasoned that because Dr. Siddiqui had been a party to this action for over three years and had filed numerous substantive documents in the case, a dismissal *with prejudice* rather than *without prejudice* seemed to be the most appropriate disposition (*see* Doc. 158). The Court's Order provided Plaintiff with one week to supplement his notice by explaining why a dismissal without prejudice was appropriate (Doc. 158). However, Plaintiff did not supplement his notice of dismissal or otherwise provide an explanation as to why he sought a dismissal without prejudice. Accordingly, on January 3, 2024, the Court granted in part Plaintiff's Notice of Voluntary Dismissal and dismissed Dr. Siddiqui *with prejudice* (Doc. 164) (emphasis added).

Several months later, on May 10, 2024, the Court GRANTED Defendants' Motion for Summary Judgment and dismissed this case with prejudice (Docs. 169, 170). Thereafter, on June 7, 2024, Defendants filed a Bill of Costs (Doc. 171) and Motion for Sanctions (Doc. 172). As a result, the Court ordered Plaintiff's Court-appointed counsel to file a response to Defendants' Motion for Sanctions, even though counsel no longer represented Plaintiff (*see* Doc. 174). Subsequently, Plaintiff's counsel filed an Objection to Defendants' Bill of Costs (Doc. 175) and a Response in Opposition to Defendants' Motion for Sanctions (Doc. 177). And finally, Defendants filed a Reply in Support of their Motion for Sanctions (Doc. 179), as well as an accompanying Motion for Leave to File Excess Pages (Doc. 178).[5]

---

[5] Defendants' Motion for Leave to File Excess Pages is GRANTED (Doc. 178). The Court has considered the entirety of Defendants' reply in support when ruling upon Defendants' Motion for Sanctions.

<u>**ANALYSIS**</u>

Defendants' Motion for Sanctions seeks for sanctions to be imposed against Plaintiff's counsel pursuant to either Federal Rule of Civil Procedure 11 or 28 U.S.C.S. § 1927 (Doc. 172). Defendants argue sanctions are warranted because Plaintiff persisted in prosecuting meritless claims against Dr. Siddiqui and Wexford even after learning of their lack of involvement and his claims' frivolities (Doc. 172 at pp. 13-14). In response, Plaintiff's counsel contends that Defendants' motion should be denied because Defendants did not comply with the 21-day safe harbor provision provided by Rule 11(c),[6] their actions were objectively reasonable, and were often prescribed by the Court (Doc. 177).

I.    <u>*Rule 11 and § 1927 Standards*</u>

Pursuant to Rule 11, "a court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) ("In particular, a frivolous argument or claim is one that is baseless and made without a reasonable and competent inquiry.") (internal quotation marks and citation omitted). As the Seventh Circuit has explained, "[o]ne of the basic purposes of Rule 11 of the Federal Rules of Civil Procedure is 'to deter baseless filings in the district court....'" *Id.* (quoting *Cooter & Gell v. Hartmarx Corp., et al.*, 496 U.S. 384, 393 (1990)). And crucially, district courts are granted discretion in deciding whether to impose Rule 11 sanctions.

---

[6] As is discussed in greater detail below, the Court has found Plaintiff's counsel's arguments related to zealous advocacy to be meritorious. Accordingly, the Court has not considered or reached any determination as to whether Defendants satisfied Rule 11's 21-day safe harbor provision.

*See Hartmarx Corp. v. Abboud*, 326 F.3d 862, 866 (7th Cir. 2003) ("Our review of a district court's grant of Rule 11 sanctions is for abuse of discretion."). However, "[i]n exercising its discretion, a district court must also bear in mind that such sanctions are to be imposed sparingly, as they can have significant impact beyond the merits of the individual case and can affect the reputation and creativity of counsel." *Id.* at 867 (internal quotation marks and citation omitted). Additionally, "[c]ourts are expected to avoid the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *U.S. ex rel. Turner v. Michaelis Jackson & Assocs., L.L.C.*, No. 03-CV-4219-JPG, 2011 WL 13510, at *10 (S.D. Ill. Jan. 4, 2011) (internal quotation marks and citation omitted).

Likewise, § 1927 allows for the imposition of costs in certain situations, stating, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Similar to Rule 11, a district court's decision to impose or not impose sanctions under § 1927 is reviewed for an abuse of discretion. *See Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir. 2004).

II.    *Motion for Sanctions related to Dr. Siddiqui*

The bulk of Defendants' Motion for Sanctions pertains to Defendants' repeated requests for Plaintiff, and then his counsel after their court-appointment, to voluntarily dismiss Dr. Siddiqui (*see generally* Docs. 172, 179). Specifically, Defendants aver that

sanctions should be imposed against Plaintiff's counsel because counsel continued to pursue a claim against Dr. Siddiqui that was unsupported by law, even after Plaintiff and his counsel learned that Dr. Siddiqui was not the doctor who treated Plaintiff on July 28, 2017 (Doc. 172 at p. 7). The Court is not persuaded by this argument.

As an initial matter, the Court must make clear that Defendants are moving for sanctions against Plaintiff's Court-appointed counsel, not Plaintiff (*see* Doc. 172 at p. 14) ("As such, Defendants seek sanctions against Plaintiff's counsel[.]"). This is significant because Plaintiff's counsel did not enter an appearance on behalf of Plaintiff until May 9, 2022 (Doc. 105). Accordingly, the Court will not hold Plaintiff's counsel responsible for any actions that occurred over the approximately two-and-a-half-year period prior to counsel's appointment and appearance. In other words, the Court's inquiry focuses upon Plaintiff's counsel's actions beginning on May 9, 2022 (*see* Doc. 164).[7]

Ultimately, when considering both the evidence and Plaintiff's counsel's actions over that period of time, the Court is not persuaded by Defendants' arguments. Significantly, Defense counsel's argument relies upon the assumption that because Dr. Siddiqui did not treat Plaintiff on July 28, 2017, Plaintiff's claim against him was necessarily meritless. But this assumption is too narrow and thus misses the mark when it comes to the nature of Plaintiff's claim against Dr. Siddiqui. As stated in the Court's threshold review order, Plaintiff was permitted to proceed against Dr. Siddiqui on the following claim, "Lieutenant Trokey, Sergeant Rowes, and Dr. Siddiqui were deliberately

---

[7] The Court has also considered and reviewed Plaintiff's counsel's actions after Dr. Siddiqui was dismissed with prejudice (*see* Doc. 164).

indifferent to Plaintiff's need for medical treatment in violation of the Eighth Amendment." (Doc. 15 at p. 5). In other words, Plaintiff's claim against Dr. Siddiqui was based upon Dr. Siddiqui's alleged failure to provide Plaintiff with adequate medical treatment following the alleged assault. Neither Plaintiff's Complaint nor the Court's threshold review order narrowed the scope of Plaintiff's claim against Dr. Siddiqui to only considering whether Dr. Siddiqui was deliberately indifferent to Plaintiff's medical needs on July 28, 2017. Plaintiff's Complaint even alleges that he "submitted a sick call request seeking to see a doctor for medical treatment" on June 14, 2017 (Doc. 1 at p. 16), which was a date that Defendants' records indicate Dr. Siddiqui worked on (Doc. 120-8).

Consequently, regardless of whether Dr. Siddiqui worked on July 28, 2017, Plaintiff could have succeeded on his claim against Dr. Siddiqui if the evidence demonstrated that Dr. Siddiqui was deliberately indifferent to Plaintiff's serious medical needs at any point from the date of the alleged assault until at least July 28, 2017. And as both parties agree, there was evidence that Dr. Siddiqui worked on the day of the alleged assault, as well as many of the following days in June and July of 2017 (Doc. 126-1). Moreover, by looking at Plaintiff's claim through a wider lens, the evidence cited to by Defendants such as medical staffing timesheets and Dr. Shah's testimony does not necessarily prove the frivolity of Plaintiff's claim against Dr. Siddiqui because that evidence only tended to demonstrate that Dr. Siddiqui did not work on July 28, 2017.[8]

---

[8] Additionally, Defendants have repeatedly pointed to Plaintiff's deposition testimony wherein he acknowledges that Dr. Siddiqui's discovery responses indicate that per the medical records, Dr. Siddiqui did not treat Plaintiff (*see, e.g.*, Doc. 172 at pp. 3-4). However, as Plaintiff later testified during that deposition, his complaint against the doctor was that he "wasn't seen when the initial incident occurred in a proper timeframe." (Doc. 120-1 at p. 61).

Nevertheless, even if the Court assumes that Plaintiff was only proceeding on a narrow claim against Dr. Siddiqui for his alleged inadequate treatment (or lack of treatment) on July 28, 2017, the Court still is not convinced that Defendants have clearly demonstrated the frivolity of that specific claim to the extent that it warrants sanctions. For example, Defendants aver that Dr. Shah "testified he was the physician that saw Plaintiff" on July 28, 2017 (Doc. 172 at p. 14) and that staffing timesheets demonstrate that "Dr. Shah (not Dr. Siddiqui) worked on July 28, 2017." (Doc. 172 at p. 6). However, neither the medical staffing timesheets, nor Dr. Shah's medical treatment notes and related testimony unequivocally prove this claim. In fact: (1) the timesheet shows that Dr. Shah worked on 7/25/17, 7/26/17, and 7/29/17 – but does not list Dr. Shah having worked on 7/28/17 (Doc. 126-1); and (2) Dr. Shah's testimony as to whether he treated Plaintiff on July 20, 2017 or July 28, 2017 (as well as the underlying medical records he relied upon), is anything but clear (*see generally* Doc. 120-7).[9]

Consequently, given (1) the broad nature of Plaintiff's claim for a lack of medical treatment over June and July 2017, and (2) the contradictory evidence related to what doctor, if any, treated Plaintiff on July 28, 2017; it is not unreasonable that Plaintiff's Court-appointed counsel sought to further investigate Plaintiff's claim against Dr.

---

[9] The Court is likewise not persuaded by Defense counsel's arguments that emails between them and Plaintiff's counsel demonstrate that Plaintiff's counsel was refusing to dismiss Dr. Siddiqui for improper reasons (*see* Docs. 179, 179-1). To the contrary, Plaintiff's counsel provided reasons for conducting additional due diligence into the viability of Plaintiff's claim against Dr. Siddiqui (Doc. 179-1 at p. 1) ("Right now, the evidence suggests that the Menard Medical Director, your client, at the very least played a role in denying medical treatment for an inmate who should have been seen within 72 hours (per Dr. Shah's testimony). This is why Dr. Siddiqui's deposition is necessary, and why we have requested it, before we can talk about dismissal.").

Siddiqui before agreeing to voluntarily dismiss him. Indeed, the Court explicitly allowed Plaintiff's counsel to depose Dr. Siddiqui so counsel could further investigate Dr. Siddiqui's actions or inactions from June 14, 2017, until July 28, 2017 (Doc. 130).

Dr. Siddiqui's deposition occurred on December 8, 2022 (Doc. 141-1). Roughly two months later, Plaintiff's counsel moved to file an amended complaint which would have resulted in Dr. Siddiqui's dismissal had the motion been granted (*see* Doc. 140). Thus, assuming Dr. Siddiqui's deposition clearly demonstrated that Plaintiff did not have a viable claim against him, Plaintiff's counsel took only two months from that date to prepare a motion for leave to amend, prepare an amended complaint, and begin attempting to dismiss Dr. Siddiqui. From the Court's perspective, this does not demonstrate sanctionable conduct on the part of Plaintiff's counsel.[10]

Admittedly, even after Plaintiff initially attempted to dismiss Dr. Siddiqui in his motion for leave to amend, it still took almost eleven months before Dr. Siddiqui was actually dismissed. However, most of this delay is not attributable to Plaintiff's counsel's actions. For instance, the Court did not rule upon Plaintiff's motion for leave to amend as timely as it would have liked (Docs. 140, 143). In other words, Plaintiff's counsel was actively attempting to have Dr. Siddiqui dismissed at that time and cannot be faulted for that delay.

Four months later, Plaintiff's counsel moved to voluntarily dismiss Dr. Siddiqui without prejudice (Doc. 157). In this regard, the Court understands why Dr. Siddiqui is

---

[10] Notably, in reaching this conclusion, the Court has not given Plaintiff's counsel any benefit of the doubt due to their Court-appointment.

frustrated with the fact that he remained in this case for four months after the Court denied Plaintiff's motion for leave to amend. However, this argument again assumes that Plaintiff's claim against Dr. Siddiqui was frivolous. And crucially, as far as the Court can discern, neither Dr. Siddiqui's deposition (*see* Doc. 153-2) nor any filings over the year following Dr. Siddiqui's deposition unequivocally demonstrate that Plaintiff's claim against Dr. Siddiqui was frivolous or in violation of Rule 11. Accordingly, without such evidence or a similar concession from Plaintiff's counsel, Plaintiff's counsel was not obligated to promptly dismiss Dr. Siddiqui through other means.

Again, Plaintiff had evidence demonstrating that Dr. Siddiqui worked on the day of the alleged assault (and numerous days thereafter), that Plaintiff promptly sought treatment from a doctor, and that it took days for Plaintiff to see a nurse and weeks to see a doctor. Irrespective of whether this evidence would have been sufficient to convince a jury of the validity of Plaintiff's claim against Dr. Siddiqui, it was sufficient to demonstrate that Plaintiff's claim against Dr. Siddiqui was "legally viable and sufficient to avoid Rule 11 sanctions." *Mazurek v. Metalcraft of Mayville, Inc.*, 110 F.4th 938, 945 (7th Cir. 2024). For these reasons, the Court DENIES Dr. Siddiqui's Motion for Sanctions (Doc. 172).

III.    *Motion for Sanctions related to Wexford*

Defendants also argue that Plaintiff's counsel should be sanctioned for their actions related to Wexford (Doc. 172 at pp. 12-13). Specifically, Defendants contend that Plaintiff's claim against Wexford lacked a good faith basis, as evinced by both the Court's Order granting Wexford's motion for summary judgment and the evidence of numerous

doctors being staffed at Menard in June and July of 2017. Additionally, Defense counsel argues that emails between Defense counsel and Plaintiff's counsel further support the imposition of sanctions because they demonstrate that Plaintiff's counsel did not have a good faith basis for continuing to pursue a claim against Wexford and was holding a meritless claim "hostage in bad faith to leverage settlement." (Doc. 172 at pp. 13-14).

The Court is not persuaded by these contentions. Defendants' argument relies upon the contention that timesheets demonstrating several doctors were working at Menard in June and July of 2017 necessarily proves that Menard was not understaffed at that time. This is not the case, and the Court's summary judgment Order expressly rejected a similar argument - raised by Plaintiff - at the summary judgment stage when he attempted to point to Menard's medical staffing timesheets as evidence of understaffing (*see* Doc. 156 at p. 4, Doc. 156-9). The Court found this evidence to be insufficient, explaining that without any actual evidence demonstrating what constituted adequate medical staffing at Menard in 2017, "Plaintiff's own subjective beliefs as to what demonstrates inadequate medical staffing is pure conjecture and cannot be considered evidence." (Doc. 169 at p. 12, fn. 2).

Defendants are now attempting to raise the same argument, but in the opposite direction, by claiming that the medical staffing timesheets clearly prove that Menard was not understaffed in June and July of 2017. Put simply, medical staffing timesheets *alone* do not prove whether Menard's medical staffing was adequate or inadequate. There are numerous other factors to consider when determining the adequacy of medical staffing such as the total inmate population, the type of facility at issue and the frequency medical

treatment is required at that facility, the amount of support staff, agreements with outside providers, and so on.[11] Moreover, Defendants' citation to the Court's summary judgment Order is unavailing because the legal standard for summary judgment is different than the legal standard for sanctions. *Mazurek*, 110 F.4th at 944 ("[A] case is not frivolous, nor is a factual presentation baseless just because it crumbles at summary judgment."). Therefore, while Plaintiff failed to meet his evidentiary burden at the summary judgment stage, this does not prove that Plaintiff's claim against Wexford violated Rule 11.

Similarly, Plaintiff's counsel's emails to Defense counsel discussing summary judgment and a desire to settle this matter do not support Wexford's motion for sanctions. In particular, Defense counsel points to an email from Plaintiff's counsel, wherein Plaintiff's counsel stated, "I hope you will consider saving Wexford's efforts for something more productive such as settlement. We can always reconnect after Wexford's MSJ has run its course." (Doc. 159-3 at p. 1). Having thoroughly reviewed this email, as well as all others provided by the parties, the Court believes these emails simply reflect the differing positions between the parties, as opposed to evincing any bad faith on the part of Plaintiff's counsel.

Defense counsel next argues that Plaintiff's counsel should be sanctioned based upon counsel's attempt to defend against Wexford's summary judgment motion by relying upon an article that was not produced in discovery and not related to the allegations in this case (Doc. 172 at p. 12). The Court previously declined to address issues

---

[11] For example, staffing six doctors at a facility housing just 100 inmates would obviously result in a weaker claim for understaffing than at a facility with the same number of doctors but housing 3,000 inmates.

related to the report's disclosure and admissibility, and instead determined that the report was irrelevant because it was prepared four years after the events in question (Doc. 169 at p. 14, fn. 3). At this stage, the Court once again declines to analyze whether the report was properly disclosed or not. For purposes of sanctions, what is significant is that Plaintiff's counsel provided several nonfrivolous arguments as to why they believed the report was properly disclosed and admissible (*see* Doc. 160). On top of that, the Court has already denied a similar request for attorney's fees made by Wexford related to this report (Doc. 169 at p. 14).[12] As such, the Court does not believe it appropriate to rehash this issue or reverse the Court's prior decision declining to award the same fees.

Finally, Defense counsel also argues its motion for sanctions should be granted because Plaintiff's motion to amend sought to add claims against Wexford that were "entirely without a factual basis." (Doc. 172 at p. 13). However, neither Defendants' instant motion nor the Defendants' response in opposition to Plaintiff's motion for leave to amend (Doc. 141) demonstrate this contention to the Court. Unquestionably, the Court denied Plaintiff's motion for leave to file an amended complaint for the reasons stated therein (Doc. 143). Furthermore, the Court found that Plaintiff's proposed amended complaint would have prejudiced Defendants by expanding or changing the direction of certain claims (Doc. 143 at p. 17). However, failing to demonstrate good cause or acknowledge the prejudicial effect of amending one's complaint several years into

---

[12] Indeed, Defendants' motion for sanctions requests, among other things, "the fees for preparing the Motion to Strike (6.4 hours) and Reply (4.1 hours)." (Doc. 172 at p. 14). That request mirrors the request found in Defendants' Motion to Strike, wherein Defendants sought "attorney's fees for preparation of this Motion [to Strike]." (Doc. 159 at p. 3).

litigation is not the same as finding that the Plaintiff's counsel sought to add claims that were "patently frivolous." (*see* Doc. 172 at p. 11).

In conclusion, Wexford's motion for sanctions will be denied. While Plaintiff's claim against Wexford did not survive summary judgment, the Court finds the claim was not frivolous or otherwise in violation of Rule 11. For these reasons, Wexford's motion for sanctions is DENIED (Doc. 172).

<u>CONCLUSION</u>

For the reasons discussed above, Defendants' Motion for Sanctions is DENIED (Doc. 172).

**IT IS SO ORDERED.**

**DATED: January 15, 2025**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**